IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CANDICE HALE,

    PLAINTIFF(S),

V.                                      CASE NO.:

CLARENCE J.C. STEWART,
SCOTT FOREHAND, CHRIS         JURY TRIAL DEMANDED
HARDMAN, TAMI POE, JASON
HICKS, AND CHRISTOPHER
ROBERTS,

    DEFENDANT (S).

## COMPLAINT

## I. INTRODUCTION

COMES NOW, Candice Hale ("Plaintiff" or "Hale"), by and through her undersigned counsel, and files this, her Complaint for violation of her rights guaranteed under the First Amendment to the United States Constitution. The First Amendment to the United States Constitution stands as one of our nation's most fundamental protections, guaranteeing every individual the right to speak freely without fear of government suppression or retaliation. Candice Hale exercised her right to speak on matters of public concern, the death of Charlie Kirk, a political figure—expression that lies at the core of the First Amendment—and was subsequently terminated for doing so. Such retaliation cuts to the heart of democratic principles, where open discourse and the free exchange of ideas are essential to the

1

preservation of liberty and justice. Accordingly, she files this action and shows the following:

## II. JURISDICTION

1. This is a civil action arising under the First Amendment to the United States Constitution; 42 U.S.C. § 1983; and under the Constitution, common law, and statutes of the State of Alabama state law and accordingly, the jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343(a)(3) & 28 U.S.C. § 1367 for any applicable pendent state law claims.

2. Venue is proper in the Middle District of Alabama because the damages complained of occurred within this district consistent with 28 U.S.C. § 1391(b).

## III. PARTIES

3. Candice Hale is an adult resident of Gadsden, Etowah County, Alabama.

4. Christopher Roberts is an adult resident of Auburn, Lee County, Alabama.

5. At all times relevant to this complaint, Roberts was the President of Auburn University.

6. Roberts is a policymaker, and his advocacy for the termination of Plaintiff was an act of official policy.

7. Roberts is also sued in his individual capacity.

8. Clarence JC Stewart is an adult resident of Lee County, Alabama.

9. At all times relevant to this complaint, Stewart was the Assistant Vice President of Campus Safety and Compliance at Auburn University.

10. Stewart is sued in his individual capacity.

11. Scott Forehand is an adult resident of Auburn, Lee County, Alabama.

12. At all times relevant to this complaint, Forehand was the Director of Compliance, Investigations, and Security at Auburn University.

13. Forehand is sued in his individual capacity.

14. Tami Poe is an adult resident of Valley, Chambers County, Alabama.

15. At all times relevant to this complaint, Poe was the Senior Manager, Human Resources, Dean's Office at Auburn University.

16. Poe is sued in her individual capacity.

17. Jason Hicks is an adult resident of Auburn, Lee County, Alabama.

18. At all times relevant to this complaint, Hicks was the Dean of the College of Liberal Arts at Auburn University.

19. Hicks is sued in his individual capacity.

20. Chris Hardman is an adult resident of Auburn, Lee County, Alabama.

21. At all times relevant to this complaint, Hardman was a Behavioral Threat Assessment Coordinator at Auburn University.

22. Hardman is sued in his individual capacity.

## IV. FACTS

23. The plaintiff realleges and reincorporates each of the previous paragraphs as is fully set out herein.

24. At all times relevant to this complaint, Hale was employed at Auburn University as a lecturer in the College of Liberal Arts.

25. Hale was hired on or about August 16, 2023.

26. Hale received no discipline during the time that she worked for Auburn University.

27. All of Hale's performance appraisals met expectations.

28. Hale received regular pay increases commensurate with her performance.

29. Auburn University's Academic Freedom policy applicable to Hale in her position in the College of Liberal states,

> The First Amendment and the principle of Academic Freedom protect the right of both faculty members and students to express ideas and engage in debate – in writing, in the classroom, on campus and beyond the university – without fear of censorship, sanction or retaliation. Academic freedom, in particular, provides students and faculty both

4

with the right to express their views and the right to challenge another's views without penalty.[1]

30. On or about September 10, 2025, Charlie Kirk, a political activist and influencer, was killed as he was giving a talk in Utah.

31. Kirk was a republican activist.

32. Kirk regularly engaged in activism related to free speech, once posting on social media, "Hate speech does not exist legally in America. There's ugly speech. There's gross speech. There's evil speech. And ALL of it is protected by the First Amendment."

33. Kirk was giving a talk at a college campus event when he was fatally shot. As a result, his killing was livestreamed in its entirety, and a manhunt ensued to find his killer, causing intense media coverage.

34. In the aftermath of Kirk's death, President Donald Trump ordered federal flags to be flown at half-staff, and many government officials and political activists mourned his death publicly.

35. Kirk's supporters, including many in government like the Governor of Utah, characterized the violence as a political assassination.[2]

---

[1] https://cla.auburn.edu/history/about-us/statement-on-academic-freedom/ last accessed on October 8, 2025.
[2] https://www.nbcnews.com/politics/politics-news/charlie-kirks-death-prompts-outpouring-shock-grief-condemnations-polit-rcna230472 last accessed on October 9, 2025.

36. Kirk's death sparked debate around the country about his beliefs, rhetoric, and the way in which others should express themselves in response to his death.

37. On or about September 11, 2025, Candice Hale posted the following comment on her personal social media profile.



38. The post contained no threat of violence.

39. Nor did the post suggest that violence was appropriate.

40. On or about September 17, 2025, Auburn President Christoper Roberts posted the following statement on X, indicating that faculty would be subject to discipline for internet postings or public statements that promote or condone violence.



3

41. That same day, Defendant Chris Hardman sent Hale an email to coordinate a Teams meeting with himself and Scott Forehand.

42. Hale agreed to the meeting, and the three of them met via Microsoft Teams.

43. During the meeting, Forehand and Hardman questioned Hale about the internet posting.

44. Forehand asked Hale how students who were in the University's Turning Point USA chapter would feel about her comments.

45. Forehand and Hardman also questioned Hale about how she would interact with white male students if they identified themselves with Kirk's views.

---

[3] https://x.com/AuburnU/status/1968375216717103539 last accessed on October 15, 2025.

46. They also asked Hale if she had access to firearms or had any intent to harm anyone in the Turning Point USA chapter at Auburn.

47. Hale did not have any weapons and did not know there was a Turning Point USA chapter on the campus.

48. Further, Hale did not teach on campus as her courses were online only.

49. Hale emphasized that the purpose of college is to engage in the free exchange of ideas and that she would interact with students of differing views in a manner consistent with that ideal.

50. Despite there being no direct reference to any contemplated act of violence, Forehand and Hardman indicated that the meeting was not related to any Human Resources purpose and that their purpose was to determine if she was a threat to the safety of the school, or if she herself was in danger.

51. At the conclusion of the meeting, Forehand and Hardman concluded that Hale was not a threat to the safety of any person on campus.

52. Two days later, Tami Poe requested a meeting with Hale and Jason Hicks.

53. Hale asked that the meeting be postponed until she could get counsel to represent her interest.

54. In response, Poe told Hale that regardless of the date of the meeting, Hale was being placed on paid administrative leave and forbade her from having any contact with her students.

55. Poe called Hale on September 22, 2025, and told her that she would not permit Hale to have counsel at their meeting.

56. During the call, Hale discussed her concerns with having been interrogated by the Compliance department.

57. Hale expressed her concerns to Poe that, despite the Compliance Department indicating that Hale was not a threat, they had nevertheless contacted Human Resources.

58. The next day, on September 23, 2025, Poe contacted Hale to set up the meeting for later in the afternoon. Around 3:00 pm, Hale met with Hicks and Poe on a Teams video call.

59. During the meeting, Poe and Hicks denied that Compliance reported her saying instead that the Provost's office made them aware of her post.

60. During the meeting, Hicks told Hale that the University wanted to end her employment and that they would give her 21 days to consider a severance agreement.

61. Hale has not been allowed to return to her job.

62. Even though there were no direct threats to any person on campus and the Compliance Department had concluded she was not a threat, on or about September 23, 2025, Clarence JC Stewart banned Hale from the Auburn University Campus.

## V.　CAUSES OF ACTION

### COUNT I: SECTION 1983 - FIRST AMENDMENT VIOLATION

### Against All Defendants

63. Each of the paragraphs of this Complaint is realleged and incorporated as if fully restated herein.

64. The First Amendment of the United States Constitution protects a citizen's right to engage in protected speech and expression through protest and advocacy, without government retaliation.

65. After Charlie Kirk's untimely death at the hands of an alleged political assassin, Plaintiff engaged in protected activity when she spoke about her feelings about his behavior while alive.

66. Hale did not threaten or exhibit violence in her posts.

67. Hale's speech was about an issue of public concern, the allegedly politically motivated killing of a public figure.

68. Roberts directed his staff to discipline employees who spoke out on an issue of public concern if in his view that speech promoted or condoned violence.

69. Forehand, under the guise of investigating a safety concern, initiated and conducted an investigation into Hale's speech and the effect it would have on students whose beliefs mirrored Kirk's.

70. Hardman, under the guise of investigating a safety concern, initiated and conducted an investigation into Hale's speech and the effect it would have on students whose beliefs mirrored Kirk's.

71. Upon information and belief, Hardman and Forehand advised Human Resources of their findings.

72. On or about September 19, 2025, Poe notified Hale that she was suspended.

73. On or about September 23, 2025, Hicks and Poe advised Hale that the University intended to terminate her employment and offered her a severance agreement.

74. That same day, Stewart permanently banned Hale from the campus.

75. The First Amendment right to speech and expression without government retaliation is a clearly established right.

76. Defendants, acting under color of state law, subjected Hale to an investigation, suspended her, terminated her employment, and banned her from Auburn University because of her speech.

77. Defendants intentionally retaliated against Plaintiff because she exercised her First Amendment rights.

78. Defendants did so with full knowledge that their actions could violate the First Amendment.

79. Defendants' actions adversely affected Plaintiff's constitutionally protected speech and directly and proximately caused Plaintiff to suffer monetary damages, reputational harm, as well as emotional distress and humiliation.

## COUNT II: VIOLATION OF ARTICLE I SECTION 4 OF THE ALABAMA CONSTITUTION

### Against All Defendants

80. Each of the paragraphs of this Complaint is realleged and incorporated as if fully restated herein.

81. Article I Section 4 of the Alabama Constitution protects a citizen's right to engage in protected speech and expression through protest and advocacy, without government retaliation.

82. After Charlie Kirk's untimely death at the hands of an alleged political assassin, Plaintiff engaged in protected activity when she spoke about her feelings about his behavior while alive.

83. Hale did not threaten or exhibit violence in her posts.

84. Hale's speech was about an issue of public concern, the allegedly politically motivated killing of a public figure.

85. Roberts directed his staff to discipline employees who spoke out on an issue of public concern if in his view that speech promoted or condoned violence.

86. Forehand, under the guise of investigating a safety concern, initiated and conducted an investigation into Hale's speech and the effect it would have on students whose beliefs mirrored Kirk's.

87. Hardman, under the guise of investigating a safety concern, initiated and conducted an investigation into Hale's speech and the effect it would have on students whose beliefs mirrored Kirk's.

88. Upon information and belief, Hardman and Forehand advised Human Resources of their findings.

89. On or about September 19, 2025, Poe notified Hale that she was suspended.

90. On or about September 23, 2025, Hicks and Poe advised Hale that the University intended to terminate her employment and offered her a severance agreement.

91. That same day, Stewart permanently banned Hale from the campus.

92. Defendants' actions in initiating an investigation, suspending, terminating the employment of, and banning Plaintiff from Auburn's campus adversely affected Plaintiff's constitutionally protected speech and directly and proximately caused Plaintiff to suffer monetary damages, reputational harm, as well as emotional distress and humiliation.

## COUNT III: WANTONNESS

### Against All Defendants

93. Plaintiff reincorporates and realleges all of the preceding paragraphs as if fully set out here.

94. Defendants consciously and deliberately acted with the intent to cause injury to plaintiff's personal or property rights.

95. Defendants took those actions under circumstances that imply evil intent.

96. All of these actions were taken recklessly, or with conscious disregard for the Plaintiff's rights.

97. Defendants' further acts subjected Plaintiff to cruel and unjust hardship in conscious disregard for her rights.

98. As a proximate result of the Defendants' wantonness, Plaintiff was caused to suffer the following injuries and damages: Plaintiff suffered severe mental anguish and/or emotional distress from the said injuries caused by the Defendant. Plaintiff, as a proximate result of the Defendant's said conduct was caused to lose income.

99. Plaintiff claims punitive damages from the Defendants because of their wanton conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. An award of compensatory damages, including all appropriate pre- and post-judgment interest, in an amount to be determined that would adequately compensate for their injuries caused by the conduct of the Defendants alleged herein (as well as the cost of treating those injuries), including, but not limited to: physical harm, emotional distress, pain and suffering, embarrassment, and feelings of unjust treatment.

B. An award of punitive damages in an amount to be determined for the intentional and reckless conduct alleged herein that would effectively deter the

Defendants and others similarly situated from engaging in similar behavior in the future;

C.  An award of costs and reasonable attorneys' fees in this action under 42 U.S.C. §§ 1983, 1988, and 12205; and 29 U.S.C. § 794a;

D.  Trial by jury;

E.  Issue a preliminary injunction pursuant to USCS Fed Rules Civ Proc R 65 ordering defendant to immediately reinstate plaintiff to her former position with the same salary, benefits, and conditions of employment that she enjoyed prior to her unlawful termination, pending final resolution of this action.

F.  Issue a permanent injunction ordering defendant to reinstate plaintiff to her former position and prohibiting defendant from taking any retaliatory action against plaintiff for engaging in constitutionally protected speech. Appropriate injunctive relief; and

G.  Such other relief as this Court deems just and proper.

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

/s/ Kira Fonteneau
Kira Fonteneau

OF COUNSEL:
The Workers Firm LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
T. 404.382.9660 F. 205.651.4130
fonteneau@theworkersfirm.com